MATTHEW J. KEMNER (State Bar No. 188124)
GARRETT SANDERSON III (State Bar No. 131026)
CARROLL, BURDICK & McDONOUGH LLP
44 Montgomery Street, Suite 400
San Francisco, CA 94104
Telephone: (415) 989-5900
Facsimile: (415) 989-0932
E-mail: mkemner@cbmlaw.com

Attorneys for Plaintiffs
BEILSTEIN-INSTITUT ZUR FÖRDERUNG DER
CHEMISCHEN WISSENSCHAFTEN &
BEILSTEIN GmbH

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BEILSTEIN-INSTITUT ZUR FÖRDERUNG DER CHEMISCHEN WISSENSCHAFTEN, a German Non-Profit Foundation; and BEILSTEIN GmbH, a German Limited Liability Corporation, <br><br> Plaintiffs, <br><br> v. <br><br> MDL INFORMATION SYSTEM, INC., a Delaware Corporation, and DOES 1-10, <br><br> Defendants. | Case No. C 04-5368 SI <br><br> [Related Case Pending, No. C 06-1883 SI] <br><br> **STIPULATION FOR FILING OF THIRD AMENDED COMPLAINT; [PROPOSED] ORDER DEEMING THIRD AMENDED COMPLAINT FILED** <br><br> Hon. Susan Illston |

CBM-SF\SF308763.1

1    ### STIPULATION FOR FILING OF THIRD AMENDED COMPLAINT

2    By and through their respective counsel of record, plaintiffs Beilstein-Institut zur Förderung

3    der Chemischen Wissenschaften and Beilstein GmbH (collectively "Beilstein") on the one hand,

4    and defendant MDL Information Systems, Inc. ("MDL, Inc."), stipulate and agree that Beilstein

5    may file its Third Amended Complaint, a copy of which is attached hereto.

6    Dated:  June 15, 2006                    Respectfully submitted,

7                                             CARROLL, BURDICK & McDONOUGH LLP

8                                             By____/s/ Matthew J. Kemner_____
                                                     Matthew J. Kemner
9                                                 Attorneys for Plaintiffs
                                                 BEILSTEIN-INSTITUT ZUR FÖRDERUNG
10                                                DER CHEMISCHEN WISSENSCHAFTEN &
                                                 BEILSTEIN GmbH

11   Dated:  June 16, 2006                    Respectfully submitted,

12                                             BOGATIN, CORMAN & GOLD

13                                             By____/s/ Andrew M. Gold_____
                                                     Andrew M. Gold
14                                                Attorneys for Defendant
                                                 MDL INFORMATION SYSTEMS, INC.
15

16

17   Pursuant to General Order 45, Section X.B., I hereby attest that I have on file the holograph

18   signatures for the conformed signatures indicated above in this e-filed document.

19                                                  /s/ Matthew J. Kemner_____
                                                     Matthew J. Kemner
20                                                Attorneys for Plaintiffs
                                                 BEILSTEIN-INSTITUT ZUR FÖRDERUNG
21                                                DER CHEMISCHEN WISSENSCHAFTEN &
                                                 BEILSTEIN GmbH

22                                 ### ORDER

23   Good cause appearing therefore, the foregoing stipulation is approved and the attached

24   Third Amended Complaint is deemed filed.

25   Dated:  _____, 2006

26                                             _____
                                                 THE HONORABLE SUSAN ILLSTON
27                                               United States District Judge

28

CBM-SF\SF308763.1                          -2-

**TAB 1**

1   MATTHEW J. KEMNER (State Bar No. 188124)
    GARRETT SANDERSON III (State Bar No. 131026)
2   CARROLL, BURDICK & MCDONOUGH LLP
    44 Montgomery Street, Suite 400
3   San Francisco, CA 94104
    Telephone: (415) 989-5900
4   Facsimile: (415) 989-0932
    E-mail: mkemner@cbmlaw.com
5
    Attorneys for Plaintiffs
6   BEILSTEIN-INSTITUT ZUR FÖRDERUNG DER
    CHEMISCHEN WISSENSCHAFTEN &
7   BEILSTEIN GmbH

8                 UNITED STATES DISTRICT COURT

9               NORTHERN DISTRICT OF CALIFORNIA

10

11  BEILSTEIN-INSTITUT ZUR                Case No. C 04-5368 SI
    FÖRDERUNG DER CHEMISCHEN
    WISSENSCHAFTEN, a German Non-Profit   [Related Case Pending, No. C 06-1883 SI]
12  Foundation; and BEILSTEIN GmbH, a
    German Limited Liability Corporation,  **BEILSTEIN'S THIRD AMENDED**
13                                         **COMPLAINT**
                  Plaintiffs,
14                                         **DEMAND FOR JURY TRIAL**
              v.
15
    MDL INFORMATION SYSTEM, INC., a
16  Delaware Corporation, and DOES 1-10,
                                           Hon. Susan Illston
17                Defendants.

18

19

20

21

22

23

24

25

26

27

28

CBM-SF\SF291913.1

**INTRODUCTION AND SUMMARY OF THE ACTION**

1.      Through decades of research, effort, and hard work, plaintiffs Beilstein-Institut zur Förderung der Chemischen Wissenschaften and Beilstein GmbH (collectively, "Beilstein") have created, and own, the "Beilstein Database" and its related components. The Beilstein Database itself is the world's largest factual database of organic chemistry information, and many of its related components are proprietary items that allow this immense amount of complex information to be organized and displayed in manner that is most helpful to scientists. Many researchers consider the Beilstein Database and its related components to be extremely important tools in the creation of life-saving medicines and other critical products.

2.      Beilstein is a German non-profit organization with approximately 25 employees, dedicated to the advancement of chemical scientific research. As such, Beilstein needed help to market, maintain, develop, and grow the important scientific resource represented in the Beilstein Database and its related components. In 1998, Beilstein entered into negotiations with the Reed Elsevier Group—one of the world's largest conglomerates, self-described on its website as "a world leading publisher of information"—looking to obtain the assistance it needed. Defendant MDL Information Systems, Inc. ("MDL") is one of the companies of the Reed Elsevier Group.

3.      Negotiations with the Reed Elsevier Group resulted in several agreements that should have ensured the preservation and growth of the Beilstein Database and its related components (the "1998 Agreements"), but defendant has instead damaged these unique scientific resources. Among other things, defendant has accessed, used, and copied Beilstein's proprietary and confidential information to create competing databases. Moreover, far from marketing and promoting the Beilstein Database, defendant has expressly told Beilstein that it is attempting to "dry out" the Database, trying to compel the non-profit organization Beilstein into giving the Beilstein Database to the Reed Elsevier Group at an unfairly low price.

4.      Defendant's conduct constitutes tortious interference with the 1998 Agreements designed to promote, develop, and grow the Beilstein Database and its related components, as well as copyright infringement, conversion, trespass to chattels, trade secret misappropriation, Lanham Act violations, common law unfair competition, constructive trust/unjust enrichment, and unfair

1   and unlawful business acts or practices in violation of Cal. Bus. & Prof. Code §§ 17200 *et seq.*

2   　　　5.　　Defendant, as part of a worldwide conglomerate, has engaged in its wrongful

3   conduct in multiple locations throughout the world.  The Federal Republic of Germany has already

4   adjudicated much of defendant's conduct to be unlawful, unfair, and improper.  As MDL itself

5   argued in seeking venue for its counter-claims before this Court, however, "the alleged events

6   giving rise to Beilstein's alleged claims occurred in counties located within the San Francisco and

7   Oakland Divisions of this Court."  Thus, to protect the valuable scientific resource provided by the

8   Beilstein Database and its related components, Beilstein requires the aid of this Court and prays for

9   the relief described herein.

10   　　　　　　　　　　　**THE PARTIES**

11   　　　6.　　Plaintiff Beilstein-Institut zur Förderung der Chemischen Wissenschaften is a non-

12   profit foundation organized and existing under the laws of the Federal Republic of Germany, with

13   its principal place of business in Frankfurt am Main, Germany.

14   　　　7.　　Plaintiff Beilstein GmbH is a limited liability corporation organized and existing

15   under the laws of the Federal Republic of Germany, with its principal place of business in

16   Frankfurt am Main, Germany.

17   　　　8.　　Defendant MDL is a corporation organized and existing under the laws of

18   Delaware with its principal place of business in the State of California, within the jurisdiction of

19   this Court.  MDL is part of the Reed Elsevier Group.  MDL has asserted in this litigation it

20   received a sublicense from MDL Information Systems GmbH ("MDL GmbH") that is wholly

21   derivative from the 1998 Agreements.  MDL GmbH is also an affiliated company within the Reed

22   Elsevier Group.

23   　　　9.　　The true names and capacities of the defendants sued herein as Does 1 through 10

24   are unknown to Beilstein at this time and are therefore sued by such fictitious names.  Beilstein

25   will amend this Complaint to allege the true names and capacities of Does 1 through 10 when

26   Beilstein knows them.  Beilstein is informed and believes that each of the Doe defendants is in

27   some manner legally responsible for the actions alleged herein.

28   　　　10.　　On information and belief, Beilstein alleges that each defendant, including those

1   sued herein as Does 1-10, was acting as an agent, representative, aider-and-abettor, co-

2   conspirator, and/or the alter ego of every other defendant and/or other persons in doing the acts

3   described in this Complaint, and at all relevant times was acting within the course and scope of

4   such agency, representation, aiding-and-abetting, conspiracy, and/or alter ego capacity in doing

5   the acts described herein.

6                   **JURISDICTION, VENUE, AND INTRADISTRICT ASSIGNMENT**

7           11.     Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1331, 28 U.S.C. §

8   1338(a)-(b), and 28 U.S.C. § 1367, as certain claims herein arise under the laws of the United States

9   and the remaining claims asserted in this action are so related to the claims within the original

10  jurisdiction of this Court that they form part of the same case or controversy under Article III of the

11  United States Constitution. Jurisdiction is independently proper in this Court pursuant to 28 U.S.C.

12  § 1332, as there is complete diversity between the parties and the amount-in-controversy exceeds

13  $75,000, exclusive of interest and costs.

14          12.     Personal jurisdiction, venue, and intradistrict assignment are proper in this Court

15  pursuant to 28 U.S.C. § 1391, 28 U.S.C. § 1400 and N.D. Cal. Local Rule 3-2(c), as MDL has its

16  principal place of business within this district and, in its counterclaims asserted in this action, MDL

17  itself has asserted that "the alleged events giving rise to Beilstein's alleged claims, occurred in

18  counties located within the San Francisco and Oakland Divisions of this Court."

19                                  **FACTUAL BACKGROUND**

20                  **THE BEILSTEIN DATABASE AND ITS RELATED COMPONENTS**

21          13.     Beilstein-Institut zur Förderung der Chemischen Wissenschaften is a German non-

22  profit foundation established by the Max Planck Society in 1951. Beilstein's purpose is the

23  advancement of research in the chemical science and its related areas and disciplines.

24          14.     Since its founding, Beilstein has continued to update the "Beilstein Handbook of

25  Organic Chemistry," which was first published in 1881. The Beilstein Handbook of Organic

26  Chemistry was distributed in print form for over 100 years and the final print edition, published in

27  1998, consisted of 503 volumes totaling more than 440,000 pages.

28          15.     Beilstein began preparing an extensive, searchable scientific resource known as the

1    "Beilstein Database" in 1983.  The Database draws upon the content of the Beilstein Handbook of

2    Organic Chemistry, primary literature and patents, as well as other sources useful in chemical

3    research.  The Database currently consists of more than nine million organic compounds, as well

4    excerpts of scientific literature and other research sources from the late 18th century to the

5    present.  In a nutshell, the Beilstein Database is the world's largest factual database of organic

6    chemistry information.

7         16.    Many scientific researchers consider the Beilstein Database to be an extremely

8    significant tool for designing new medicines and other organic chemical compounds.  The

9    Database is extremely valuable from a scientific perspective for two primary reasons.  First, the

10   Database contains a substantial amount of information, attempting to reflect all important

11   knowledge of modern organic chemistry.  As scientific advancement progresses, it is extremely

12   important for the Beilstein Database to keep current with the latest research and knowledge.

13   Second, the information within the Database is organized in a detailed, proprietary manner.  The

14   Database not only organizes information about more than nine million organic chemical

15   compounds, but it also explains the chemical, physical, and pharmacological properties of such

16   compounds—displaying all of this significant information in a proprietary manner called the

17   "Beilstein A/V Displays."

18        17.    The organizational system and the Beilstein A/V Displays allow scientists to

19   understand how any particular chemical compound can be prepared and how that compound will

20   "behave" in the chemical sense.  All of this knowledge enables scientists to find successful ways

21   to optimally synthesize known compounds, and also synthesize new compounds.

22        18.    To enable organization of the vast amount of chemical research available around the

23   world in a manner most helpful to scientific researchers, Beilstein developed a detailed, 600-page

24   proprietary system called the "Beilstein Excerption Guidelines."  Beilstein uses the Beilstein

25   Excerption Guidelines and related production software ("Production Software") to ensure that the

26   Guidelines are followed when scientific knowledge is placed into the Beilstein Database.

27        19.    Adherence to the Beilstein Excerption Guidelines is necessary because the

28   Guidelines provide needed standardization to scientific research that has changed in formatting,

CBM-SF\SF291913.1                                    -4-

1   terminology, and other aspects over the centuries.  The Guidelines reflect the knowledge gained

2   through more than 100 years of doing excerptions and provide comprehensive guidance as to best

3   practices, allowing the information to be excerpted in the most appealing and organized manner,

4   while being ultimately reliable, comprehensible, and useful.  The excerption process for the

5   Beilstein Database requires an immense amount of skill and knowledge in the area of organic

6   chemistry.  It is not a generalized data processing task; rather, excerptors for the Beilstein Database

7   have generally been professors and post-doctoral fellows at the world's pre-eminent institutions of

8   learning.

9                        ### THE 1998 AGREEMENTS AND THEIR PURPOSE

10          20.     Desiring to continue to develop and grow the Beilstein Database, as well as its

11   scientific value and pre-eminence, Beilstein entered into negotiations with the Reed Elsevier

12   Group in 1998.  These discussions resulted in the 1998 Agreements between Beilstein and MDL

13   GmbH, formerly known as Beilstein Informationsysteme GmbH.  In these Agreements, MDL

14   GmbH agreed to market, maintain, and expand the Beilstein Database with Beilstein retaining

15   ownership and certain control over the Database and its related components.  For the sole purpose

16   of furthering these activities with respect to the Beilstein Database and its related components,

17   Beilstein gave MDL GmbH access to certain confidential and proprietary information and licensed

18   to MDL GmbH certain intellectual and industrial property rights relating to the Database and its

19   related components.

20          21.     To ensure the scientific pre-eminence of the Beilstein Database and its related

21   components, one of the 1998 Agreements (the "License Agreement") prohibited, among other

22   things, mingling of the content of the Beilstein Database with other data or databases, merging the

23   Beilstein Database with data from other sources, and/or modifying the Beilstein Excerption

24   Guidelines, the Beilstein A/V Displays, or other proprietary information within the Database

25   (referred to in the agreement as "Database Content").  Among other things, the 1998 Agreements

26   also required promotion and development of the Beilstein Database and its related components, as

27   well as the transfer of property rights to new products within a "Scientific Area" related to the

28   Database Content.

CBM-SF\SF291913.1

-5-

22.     To ensure that the knowledge contained within the Beilstein Database reflected new and current scientific developments, another of the 1998 Agreements (the "Service Agreement") required MDL GmbH to provide to Beilstein a continuously increasing number of scientific excerpts and abstracts of a particular quality on an annualized basis.

23.     According to MDL's prior pleadings in this case, MDL GmbH entered into a subagreement with MDL, attempting to transfer to MDL certain of MDL GmbH's rights and obligations under the 1998 Agreements. As described above, both MDL GmbH and MDL are affiliated companies within the Reed Elsevier Group.

## MDL'S SCHEME TO MISAPPROPRIATE AND/OR "DRY OUT" THE BEILSTEIN DATABASE AND RELATED ITEMS

24.     Through the "subagreement" scheme described above and in MDL's own statements, defendant gained access to sensitive information about the Beilstein Database and its related components. Since that time, defendant has unfairly, unlawfully, and improperly used the content, prestige, excerptors, customers, tangible property, intellectual and industrial property, and other resources associated with the Beilstein Database to design and operate competitive databases owned by the Reed Elsevier Group (*i.e.*, databases that Reed Elsevier asserts will not need to be returned to Beilstein upon termination of the license granted in the 1998 Agreements).

25.     Defendant has engaged, and continue to engage, in these unfair, unlawful, and improper tactics, because it is trying to take the Beilstein Database—or, at the very least, all the benefits of the Database—for themselves. Defendant has pressured, and is continuing to pressure, the non-profit organization, Beilstein, into giving the Beilstein Database to the Reed Elsevier Group at an unfairly low price. As a senior-level executive within the Reed Elsevier Group expressly told Beilstein, the strategy of the Reed Elsevier Group was to "dry out" the Beilstein Database if Beilstein would not turn the Database over.

26.     Defendant has misappropriated the content, prestige, excerptors, customers, tangible property, intellectual and industrial property, and other resources associated with the Beilstein Database. In just one example of many, in November 2001 Patricia Rougeau—who was the dual head of both MDL GmbH and MDL at the time—approached Beilstein indicating that

defendant had ideas regarding the creation of intellectual property and other resources within the "Scientific Area" for a patent database. At this time and for a substantial period thereafter, defendant acknowledged that, since the information was within the "Scientific Area," it was Beilstein's property under the 1998 Agreements. As the Reed Elsevier Group became increasingly frustrated with its inability to obtain the Beilstein Database, however, defendant simply misappropriated what it acknowledged to be Beilstein's property and marketed it as MDL's own database, the MDL Patent Chemistry Database.

27. In concert with MDL GmbH, defendant also employed a program known as "Compound Locator" to unfairly, unlawfully, and improperly copy, mingle, and modify the Beilstein Database and its related components, so as to mix them with Reed Elsevier Group products. On information and belief, defendant engaged in this strategy to deter customers from directly accessing the Beilstein Database (*i.e.*, "dry out" the Database), to pass off and otherwise confuse customers into using Reed Elsevier products instead of the Beilstein Database, and/or engage in competition with the Beilstein Database through unfair, unlawful, and improper means.

28. Beilstein is further informed and believes that defendant copied the Beilstein Excerption Guidelines, the Production Software, the Beilstein Database, and the Beilstein A/V Displays for the specific purpose of creating MDL's own databases that would contain the same information as that contained in the Beilstein Database, could be accessed and used in the way with which Beilstein users were already comfortable, and would look the same as when they used the Beilstein Database. With access to the Beilstein Excerption Guidelines, the Production Software, the Beilstein Database, and the Beilstein A/V Displays, defendant has been able to use Beilstein proprietary materials in creating and building MDL's own databases with the goal that Reed Elsevier would no longer need the Beilstein name to retain Beilstein customers. MDL has designed its databases to imitate the Beilstein Database as much as possible to minimize barriers to the desired shift of Beilstein customers to MDL's databases and associated materials.

29. Additionally, in some instances, defendant has attempted to pass MDL products off as if they are Beilstein-authorized or Beilstein-sanctioned products in a manner calculated to deceive Beilstein customers and members of the public who are consumers or potential

1   consumers of such products.

2       30.    These—and numerous other instances—of defendant's wrongful conduct have

3   continued, and will continue, to deprive Beilstein of the benefits of its distinctive services and

4   property, reduce the value of the Beilstein name and products, deprive Beilstein of goodwill, and

5   injure Beilstein's relations with present and prospective customers.

6       31.    The statute of limitations has not yet lapsed on any of the claims alleged herein, as

7   defendant actively concealed its wrongdoing, giving rise to tolling. Additionally, Beilstein's

8   claims are subject to delayed accrual under the discovery rule and the continuing wrong theory.

9
10                     **FIRST CAUSE OF ACTION**
                  **(Tortious Interference with Contract)**

11       32.    Beilstein incorporates each and every allegation contained in Paragraphs 1 through

12   31, above, as though fully set forth herein.

13       33.    Beilstein and MDL GmbH entered into the 1998 Agreements. Those agreements

14   were valid and existing at the inception of defendant's interference.

15       34.    Defendant knew of the existence of the 1998 Agreements at the time of its

16   interference.

17       35.    Despite such knowledge, defendant intentionally and without justification or

18   privilege, induced, and encouraged MDL GmbH to breach the 1998 Agreements and/or interfered

19   with MDL GmbH's performance of its obligations under those Agreements.

20       36.    As a direct and proximate result of defendant's efforts and inducements, MDL

21   GmbH did breach the 1998 Agreements and/or was impaired in its performance of its obligations

22   under the 1998 Agreements.

23       37.    Defendant's conduct was, and continues to be, a substantial factor in causing

24   damage to Beilstein.

25       38.    Defendant has been unjustly enriched by the conduct described herein, and also

26   has improperly obtained property and/or certain rights to property that are subject to constructive

27   trust, restitution, disgorgement, and other remedial measures.

28       39.    Defendant's conduct has been despicable, wanton, oppressive, willful, malicious,

1  duplicitous, and done with conscious disregard of Beilstein's rights and with the intent of depriving

2  Beilstein of its rights, thereby justifying an award of punitive damages.

3       40.    Defendant's conduct has caused, and unless enjoined will continue to cause,

4  irreparable injury to Beilstein for which Beilstein has no adequate remedy at law.

### SECOND CAUSE OF ACTION
### (Copyright Infringement)

7       41.    Beilstein incorporates each and every allegation contained in Paragraphs 1 through

8  40, above, as though fully set forth herein.

9       42.    The Beilstein Database, the Beilstein Excerption Guidelines, the Production

10 Software, and the Beilstein A/V Displays contain material original with Beilstein that is

11 copyrightable subject matter under United States law.  Beilstein has registered these copyrights

12 with the U.S. Copyright Office, and has fulfilled all requirements for registration with respect to

13 U.S. copyrights protecting the Beilstein Database, the Beilstein Excerption Guidelines, the

14 Production Software, and the Beilstein A/V Displays.  These copyright registrations are for: (1)

15 the Beilstein Database; (2) the Beilstein Excerption Guidelines; and (3) the Production Software,

16 which includes protection and coverage for the Beilstein A/V Displays under the applicable law.

17      43.    Beilstein owns, and at all relevant times has owned, all right, title, and interest in

18 and to the U.S. copyrights and the copyright applications protecting the Beilstein Database, the

19 Beilstein Excerption Guidelines, the Production Software, and the Beilstein A/V Displays.

20      44.    At all relevant times, Beilstein has duly complied with all of the provisions of

21 United States copyright law applicable to the Beilstein Database, the Beilstein Excerption

22 Guidelines, the Production Software, and the Beilstein A/V Displays.

23      45.    By the actions described herein, defendant has been and/or is now infringing,

24 inducing infringement, and/or contributing to the infringement of Beilstein's copyrights

25 protecting the Beilstein Excerption Guidelines, the Production Software, the Beilstein Database,

26 and the Beilstein A/V Displays by producing, distributing, and placing upon the market products

27 and services copied from Beilstein's copyrighted material.

28      46.    Defendant's copyright infringement is willful and deliberate.

1        47.     Defendant's copyright infringement has caused damage to Beilstein.

2        48.     Defendant's conduct has caused, and unless enjoined will continue to cause,

3 irreparable injury to Beilstein, for which Beilstein has no adequate remedy at law.

4        49.     Defendant has been unjustly enriched by the conduct described herein, and also

5 has improperly obtained property and/or certain rights to property that are subject to constructive

6 trust, restitution, disgorgement, and other remedial measures.

7
8 **THIRD CAUSE OF ACTION**<br>**(Conversion)**

9        50.     Beilstein incorporates each and every allegation contained in Paragraphs 1 through

10 49, above, as though fully set forth herein.

11        51.     The 1998 Agreements grant and/or recognize that Beilstein has personal property

12 rights in excerptions related to the Agreements, as well as projects and research undertakings

13 falling within the "Scientific Area." Among other things—and by defendant's own admissions—

14 the "Scientific Area" encompasses the MDL Patent Chemistry Database.

15        52.     The 1998 Agreements also reserve Beilstein's personal property right to access

16 "Database Content" and the tangible media storing such content. Additionally, Beilstein has

17 reserved personal property rights in the excerption guidelines, source code and object code in the

18 Beilstein Database, production software, and database structures, as well as the tangible media

19 storing such content.

20        53.     On information and belief, defendant has either: (a) itself intentionally converted;

21 and/or (b) aided-and-abetted, conspired, and/or was the principal and/or agent acting in

22 furtherance of the intentional conversion of Beilstein's personal property rights. Such intentional

23 conversion occurred by destroying Beilstein's personal property, preventing access to Beilstein's

24 personal property, and/or taking possession of Beilstein's personal property for a significant

25 period of time.

26        54.     Beilstein did not consent to any of the acts of conversion described herein.

27        55.     Defendant's conduct was, and continues to be, a substantial factor in causing

28 damage to Beilstein.

CBM-SF\SF291913.1

-10-

56.     Defendant's conduct has caused, and unless enjoined will continue to cause, irreparable injury to Beilstein, for which Beilstein has no adequate remedy at law.

57.     Defendant has been unjustly enriched by the conduct described herein, and also has improperly obtained property and/or certain rights to property that are subject to constructive trust, restitution, disgorgement, and other remedial measures.

58.     Defendant's conduct has been despicable, wanton, oppressive, willful, malicious, duplicitous, and done with conscious disregard of Beilstein's rights and with the intent of depriving Beilstein of its rights, thereby justifying an award of punitive damages.

### FOURTH CAUSE OF ACTION
### (Trespass to Chattels)

59.     Beilstein incorporates each and every allegation contained in Paragraphs 1 through 58, above, as though fully set forth herein.

60.     As described above, Beilstein has been granted and/or retained personal property rights in many of the items at issue in this lawsuit.

61.     On information and belief, defendant has either: (a) itself intentionally and without authorization used and/or interfered with Beilstein's possessory interest in such property rights; and/or (b) aided-and-abetted, conspired, and/or was the principal and/or agent acting in furtherance of the intentional and unauthorized use and/or interference with Beilstein's possessory interest in such property rights.

62.     Defendant's unauthorized use of and/or interference with Beilstein's property rights has resulted in damage to Beilstein.

63.     Defendant's conduct has caused, and unless enjoined will continue to cause, irreparable injury to Beilstein, for which Beilstein has no adequate remedy at law.

64.     Defendant has been unjustly enriched by the conduct described herein, and also has improperly obtained property and/or certain rights to property that are subject to constructive trust, restitution, disgorgement, and other remedial measures.

65.     Defendant's conduct has been despicable, wanton, oppressive, willful, malicious, duplicitous, and done with conscious disregard of Beilstein's rights and with the intent of depriving

1    Beilstein of its rights, thereby justifying an award of punitive damages.

2

3                              **FIFTH CAUSE OF ACTION**
                            **(Trade Secret Misappropriation)**
4

5          66.    Beilstein incorporates each and every allegation contained in Paragraphs 1 through

     65, above, as though fully set forth herein.
6

7          67.    Beilstein owns information developed for use in excerpting materials for inclusion

8    in the Beilstein Database, as well as proprietary customer and excerptor lists related to the

     Beilstein Database ("Beilstein Trade Secret Information"). The Beilstein Trade Secret
9
     Information is highly valuable and unique, contributing to a significant portion of the value of the
10
     Beilstein Database. Beilstein has allowed dissemination of the Beilstein Trade Secret Information
11
     only under conditions of confidentiality and has used reasonable efforts to maintain its secrecy.
12
     The Beilstein Trade Secret Information derives independent economic value from not being
13
     generally known to the public or other persons who can obtain value from its disclosure or use.
14

15         68.    Defendant gained access to the Beilstein Trade Secret Information because of the

16   1998 Agreements between MDL GmbH and Beilstein. Defendant thus knows or should know

     that those Agreements limit use of the Beilstein Trade Secret Information, require confidentiality
17
     for the Beilstein Trade Secret Information, and that the Information cannot be used beyond the
18
     scope permitted by the 1998 Agreements (*i.e.*, promotion and development of the Beilstein
19
     Database). Defendant's use of any Beilstein proprietary information is improper. On information
20
     and belief, defendant nevertheless has used the Beilstein Trade Secret Information in
21
     unauthorized ways, beyond what is allowed by the 1998 Agreements. Defendant is or should be
22
     aware that its uses are improper.
23

24         69.    On information and belief, and by way of example only, defendant has used the

25   Beilstein Trade Secret Information in creating, developing, and growing, Reed Elsevier's own

     products, including the MDL Patent Chemistry Database. Beilstein is informed and believes that
26
     additional acts by defendant also violate Beilstein's trade secret rights.
27

28         70.    By its actions alleged herein, defendant has misappropriated Beilstein Trade Secret

1  Information in violation of California Civil Code §§ 3426.1 *et seq.*

2      71.    Defendant's acts constitute trade secret misappropriation and has harmed Beilstein

3  financially.

4      72.    Defendant's conduct has also caused, and unless enjoined will continue to cause,

5  irreparable injury to Beilstein, for which Beilstein has no adequate remedy at law.

6      73.    Defendant has been unjustly enriched by the conduct described herein, and also

7  has improperly obtained property and/or certain rights to property that are subject to constructive

8  trust, restitution, disgorgement, payment of royalties and other remedial measures.

9      74.    Defendant's misappropriation was willful and malicious, thereby justifying an award

10  of punitive damages.

11

12  

**SIXTH CAUSE OF ACTION**
**(Lanham Act Violations & Common Law Unfair Competition)**

13      75.    Beilstein incorporates each and every allegation contained in Paragraphs 1 through

14  74, above, as though fully set forth herein.

15      76.    The Beilstein name has been used in commerce, in connection with the Beilstein

16  Handbook of Organic Chemistry and other scientific resources, for more than a century.  It has

17  been used in commerce in connection with the Beilstein Database and its related components

18  since its inception in the early 1980s.

19      77.    In offering a number of products, including but not limited to the MDL Patent

20  Chemistry Database, defendant has sold, offered for sale, distributed and/or advertised products

21  and/or services that constitute a false designation of origin, false or misleading description of fact,

22  and/or false or misleading representation of fact that is likely to cause confusion or mistake, or to

23  deceive as to the affiliation, connection, or association of MDL's goods and/or services with the

24  Beilstein Database and the Beilstein name.  Defendant's acts have also misrepresented the source,

25  nature, and characteristics of MDL's products by indicating that such products are authorized by

26  Beilstein, sponsored by Beilstein, and/or have the same source as the Beilstein Database.

27  Defendant's wrongful acts are continuing.

28      78.    Defendant has engaged in the wrongful acts described herein in commerce in the

1    United States, including commerce within California and specifically within this District.

2        79.    Defendant is not authorized to represent or present its goods or services as (a)

3    being authorized or sponsored by Beilstein, or (b) having the same source as the Beilstein

4    Database.

5        80.    Defendant's first sale of goods and/or services covered within this cause of action

6    occurred long after plaintiffs' first use of the Beilstein mark and long after the Beilstein mark

7    became famous.

8        81.    Defendant is and/or was selling the infringing goods and/or services through the

9    same or similar channels of trade as the Beilstein Database and in direct competition with the

10   Beilstein Database. Defendant's conduct has caused competitive injury to Beilstein including,

11   among other things, dilution of the value of the Beilstein name.

12       82.    Defendant's conduct has caused, and unless enjoined will continue to cause,

13   irreparable injury to Beilstein, for which Beilstein has no adequate remedy at law.

14       83.    Defendant has been unjustly enriched by the conduct described herein, and also

15   has improperly obtained property and/or certain rights to property that are subject to constructive

16   trust, restitution, disgorgement, and other remedial measures.

17       84.    As described herein, defendant's conduct violates 15 U.S.C. § 1125(a) and/or

18   constitutes common law unfair competition under controlling law.

19       85.    Defendant's conduct has been despicable, wanton, oppressive, willful, malicious,

20   duplicitous, and done with conscious disregard of Beilstein's rights and with the intent of depriving

21   Beilstein of its rights, thereby justifying an award of punitive damages.

22
                     SEVENTH CAUSE OF ACTION
23                (Constructive Trust and Unjust Enrichment)

24       86.    Beilstein incorporates each and every allegation contained in Paragraphs 1 through

25   85, above, as though fully set forth herein.

26       87.    Beilstein has property interests in the Beilstein Database, its content, and its related

27   components. Although Beilstein provided a license for some of these property rights to MDL

28   GmbH, Beilstein has, at all times, maintained property rights in the Database, its content, and its

CBM-SF\SF291913.1                            -14-

1 │ related resources (the "Res").

2 │      88.     Defendant acquired the Res by wrongful act, accident, and/or mistake.

3 │      89.     Defendant is wrongfully detaining the Res.

4 │      90.     On information and belief, defendant has been unjustly enriched by both: (a) its

5 │ wrongful possession of the Res; and (b) its wrongful use of the Res to create and/or improve other

6 │ databases and/or products including but not limited to the MDL Patent Chemistry Database,

7 │ xPharm Database, the MDL Toxicity Database, and/or the project known as Rhein Main

8 │ (collectively, the "Products").

9 │      91.     Because the Products constitute profit on the Res and/or were created using the

10 │ Res (or portions thereof), Beilstein is entitled to a constructive trust with respect to the Products

11 │ as well as the Res itself.

12 │      92.     Beilstein is entitled to preliminary and permanent injunctive relief because

13 │ defendant has permitted, and is continuing to permit, the Res to diminish in value. Moreover,

14 │ defendant has wrongfully profited, and is continuing to wrongfully profit, by using, marketing,

15 │ and otherwise exploiting the Products. Beilstein has no adequate remedy at law to prevent or

16 │ correct these wrongful acts.

17 │      93.     Under the circumstances in this case, an award of punitive damages would not be

18 │ unjust or unreasonable. Moreover, punitive damages are independently justified because the

19 │ aforementioned conduct has been despicable, wanton, oppressive, willful, malicious, duplicitous,

20 │ and done with conscious disregard of Beilstein's rights and with the intent of depriving Beilstein

21 │ of its rights.

22 │                   **EIGHTH CAUSE OF ACTION**
   │           **(Unfair and Unlawful Business Acts or Practices**
23 │         **in Violation of Cal. Bus. & Prof. Code §§ 17200 *et seq.*)**

24 │      94.     Beilstein incorporates each and every allegation contained in Paragraphs 1 through

25 │ 93, above, as though fully set forth herein.

26 │      95.     By engaging in the acts alleged herein, defendant has either: (a) itself committed

27 │ unfair and unlawful business acts or practices in violation of Cal. Bus. & Prof. Code §§ 17200 *et*

28 │ *seq.* (the "UCL"); and/or (b) aided-and-abetted, conspired, and/or was the principal and/or agent

1    acting in furtherance of unfair and unlawful business acts or practices in violation of the UCL.

2           96.    Defendant's practices constitute unlawful business practices under the UCL because

3    they constitute, among other things, tortious interference with contract, conversion, trespass to

4    chattels, violations of the Lanham Act, common law unfair competition, and violations of sections

5    2223 and 2224 of the California Civil Code, Fed. R. Civ. P. 65, section 502 of the California

6    Penal Code, and 18 U.S.C. § 1030.

7           97.    Defendant's acts and/or practices constitute unfair business practices under the

8    UCL because the utility of defendant's conduct is outweighed by the injury to Beilstein; because

9    defendant's acts and/or practices offend established public policy of this State, the United States,

10   and the Federal Republic of Germany; and because defendant's acts and/or practices are immoral,

11   unethical, oppressive, unscrupulous, and/or substantially injurious.

12          98.    Defendant's conduct has caused, and unless enjoined will continue to cause,

13   irreparable injury to Beilstein, for which Beilstein has no adequate remedy at law.

14          99.    Beilstein has suffered injury in fact, and has lost money or property as a result of the

15   alleged unfair and unlawful business practices.

16         100.    Defendant has been unjustly enriched as a result of the alleged unfair and unlawful

17   business practices.

18   **<ins>PRAYER FOR RELIEF</ins>**

19   WHEREFORE, Beilstein prays as follows:

20         A.    Actual damages in excess of $75,000, the exact amount of which has yet to be

21               ascertained;

22         B.    Punitive damages;

23         C.    Statutory and/or treble damages;

24         D.    Accounting;

25         E.    Restitution;

26         F.    Disgorgement of ill-gotten profits and/or royalties;

27         G.    Constructive trust;

28         H.    Preliminary and permanent injunctive relief;

1      I.      Pre- and post-judgment interest;

2      J.      Reasonable attorneys' fees and the costs of this action; and

3      K.     Such other relief as this Court may deem just and proper.

### DEMAND FOR JURY TRIAL

Beilstein demands trial by jury in this action of all issues properly triable by jury.

Dated: June 15, 2006             Respectfully submitted,

CARROLL, BURDICK & McDONOUGH LLP

By      /s/ Matthew J. Kemner
            Matthew J. Kemner
            Attorneys for Plaintiffs
            BEILSTEIN-INSTITUT ZUR FÖRDERUNG
            DER CHEMISCHEN WISSENSCHAFTEN &
            BEILSTEIN GmbH